And good morning, Counsel. Our first case this morning is In Re Grand Jury Subpoena. Mr. Stipik, can you hear me? Yes, I can, Your Honor. Can you hear me? Yes, I can. And Ms. Yowell, can you hear me? I can hear you, Your Honor. Can you hear me? Yes, that sounds great. You may proceed, Mr. Stipik. Thank you, Your Honor. Good morning. My name is Ryan Stipik of Reinhart-Berner Van Duren, Counsel to the Appellant, and may it please this Honorable Court. This is an appeal of the District Court's order compelling Appellant to produce tens of thousands of emails and other electronically stored documents and information, or ESI, that are not responsive to a grand jury subpoena. In entering the compulsion order, the District Court granted the government unprecedented search authority in the subpoena context, conferring search warrant-like powers to the government without requiring the showing to obtain a warrant. This is because the District Court prohibited the review of the documents that hit on the compelled search terms, thus non-responsive business records, and even other documents related to things like employee weddings, vacations, and funerals, cannot be withheld from the production to the government. Instead, in this case, and in all future cases if the District Court's decision is affirmed, the government may take all of the search hits back to their offices, rummage through them at their convenience, and only then separate the responsive materials from the non-responsive. That looks and sounds like a search warrant ESI process, because it is. It's well established that the Fourth Amendment protects a business's privacy interests in order to protect the freedom of those associated with it. The District Court disregarded that interest in permitting the government to sweep up non-responsive materials along with the responsive ones. It is no solution to save, as the District Court did. If I could interrupt, Mr. Stipik? Sure. The proposition of reasonableness, or the presumption of reasonableness in this context is very strong, and that's also well established. And it requires a strong showing to overcome the presumption of reasonableness in this context. What's your strongest argument that the breadth of this compulsion order is unreasonable, and so unreasonable as to overcome the presumption of reasonableness? Yes, Your Honor. There is a presumption of reasonableness in the context of the subpoena. But what we have here is a very different scenario in terms of it's both what is the legal parameters of a subpoena, and what is the legal entitlement that the government has pursuant to a subpoena, as well as the privacy interests associated with this sweep of non-responsive materials. And so we think that the Fourth Amendment jurisprudence here is very clear, that it protects the privacy interests of employees and others associated with the company. And what that means is that the government is entitled to issue subpoenas. Those subpoenas must be interpreted and governed by the language of the subpoena itself. And the government is only entitled as a legal matter to those documents that are covered by the language of the subpoena itself. And that's embodied in Black Letter Law and Rule 17 itself, that you may only be found in contempt for disobeying a subpoena. And so the sweeping up of non-responsive materials, tens of thousands if not a hundred thousand non-responsive materials, violates that very notion of what a subpoena requires. And so that, in our view, reflects the unreasonableness in and of itself. And one case in reviewing the materials for argument here today that I think highlights that, and didn't prominently feature in our briefs, but was cited by the government at page 23, is the United States v. Lehman case. And that's at 887 F. 2nd 1328. That case involved an administrative subpoena and an investigation regarding the livestock commodity markets. And the government there was convinced that Lehman was refusing to produce responsive documents and that those documents were commingled and intertwined with responsive ones. Namely, and the district court issued a compulsion order requiring him to produce documents that were not responsive to the subpoena, namely all of his personal banking records and those of some of his family members. So documents not just dealing with the transactions in livestock. And this court overruled that compulsion order and in doing so stated that Lehman, that in ordering Lehman to produce records beyond those requested as part of a valid administrative investigation, the district court erred. This court at page 1335 went on to write, the existence of evidence that could lead to a finding that some of Lehman's personal and cattle-related records were intertwined is not sufficient cause to order the production of all of Lehman's personal records. And the government is not sure. This case and the compulsion order here is nothing like what was at issue in Lehman, which had to do with a compulsion order that required production of personal records, a totality of personal records unrelated to the subpoena itself. We have an effort here to craft, by the district judge, to craft search terms for electronically stored data that will capture what is sought in the subpoena. And, yes, there's over-inclusiveness. The district court acknowledged that. And I didn't see in any of the briefing, and I don't find with independent research, much case law for guidance on that kind of over-inclusiveness challenge, which is, I think, a fair way to summarize what your challenge is here. You do make a challenge to the subpoena itself, but your main attack is on the compulsion order and the over-inclusiveness of the search terms in the compulsion order. We don't have a lot of guidance on that. And so why shouldn't we, under the abusive discretion standard, defer to the district judge's decision? Yes, Your Honor, you are correct. There is not a lot of guidance in terms of evaluation of ESI search procedures and protocols in the government investigation context. What guidance there is, in our view, the several cases, this court's decision in Mann, dealing with a search warrant in the Ninth Circuit case in CDT, does emphasize that placing parameters on ESI searching are more important than ever in the world of ESI, given the amount of information that is created and must be gone through. And so touching back on the privacy interests, appellant did demonstrate to the court below that there are numerous categories of types of e-mails and other information, very private information about employees that would necessarily be swept up and provided to the government. And so we think that those privacy interests are very directly implicated by the court's order, that the precedent that is out there indicates as a legal matter that courts ought to impose guardrails. And in this situation, we think there are legal errors at every step of the way, a legal standard that the government failed to air as a matter of law, including specifically on this first issue, which we think is a legal question in terms of whether a subpoena recipient has the right to withhold non-responsive materials and conduct a responsiveness review of those search terms. And I think it's important to note that that's a standard process to conduct a responsive review of keyword search terms, that is the traditional method in all circumstances for every type of subpoena in the ESI world, in my experience. In the what world? In the what world, counsel? I said in the ESI world. You know, we are generalists. You may have your own favorite initialisms. But when talking to a bunch of generalist judges, it's really well to use words. Sure. I apologize for that, Your Honor. I think there's there's no legitimate reason to veer from the traditional method of review for subpoenas, and that's established by the Sedona Conference best practices that we cited in the briefing. And so we think the keyword searching followed by attorney responsiveness review is the appropriate balance. Did anybody suggest that the review be conducted by a special master? No, Your Honor. No one did suggest that. There is a sense in this case that the district judge was dissatisfied with your client's vetting of documents in earlier searches. And if that's the reason why the judge forbade any kind of vetting of the results of this run through, why shouldn't it be done by a neutral rather than everything turned over to the prosecutor? But if you didn't suggest that to the district judge, we could hardly blame the district judge for not requiring it on his own. That, Your Honor, I think would be an appropriate process. I think in some of the case law it is indicated that a independent party separate from the government could conduct that type of review. We think it's also appropriate for the subpoena recipient. I don't think you caught the significance of my last observation, which is that you didn't ask. Doesn't that forfeit the possibility? I don't think it justifies, however, the failure to suggest that alternative process, which the government could have also suggested. I don't think that warrants then to to enter the order that, again, in our view, violates appellant's constitutional rights and the privacy interests of its employees in terms of just saying turn over everything that hits on a search term. It doesn't matter if there's tens of thousands of false positive of emails and images, you know, turn those all over to the government. The appropriate method would be to remand with instructions to consider that or just reverse the order and the parties can deal with that within proceedings on remand. In our view as well, the government's main argument in terms of why the typical process in terms of reviewing hits on keyword search terms was really expedience and speed. And the appellant made a showing in the court below that it would only take an additional approximately 90 to 120 days to conduct the review. And that that's a small price to pay in order to safeguard the Fourth Amendment interests of the appellant and is not long in the scheme of all the all the other facts and interests that play. You know, the government waited almost a year after another agency invest completed an investigation of these same matters before issued the subpoena. A government repeatedly states it's at the early stages of the investigation and the government and district court conceded that content review was appropriate for for certain materials, namely the the the image files and permitted appellant 30 days to conduct it. So I think that's significant in two ways that another 60 to 90 days to complete a responsiveness review of the other materials is eminently reasonable and appropriate. And the government has provided no reason explanation why responsiveness review of the images image files should be different than emails or other documents. I see that I'm going into my rebuttal time at this point. If there are further questions at this time, I would reserve the rest of my time for rebuttal unless there are further questions. No, that's fine. Thank you. Yeah. May it please the court. My name is Amelia. Yeah. Well, on behalf of the United States. It is well established that grand jury subpoenas are appropriate investigative investigative tools that the grand jury uses to gather evidence, particularly in white collar investigations. At issue here is a remedial order ordered by the district court after failed to comply with a grand jury subpoena for more than two years. Appellant had two chances to comply with the subpoena. And each time the court found that those productions were severely inadequate. The district court determined that appellants noncompliance was an extraordinary threat to the grand jury. So it ordered appellant to produce all documents identified by very specific keyword search strings that were carefully crafted to identify documents responsive to the subpoena. This remedial order was well within the district court's discretion to enforce the subpoena, and it should be affirmed. I think it's important to note that the district court's decision in this case wasn't in a vacuum. It's not demanding production outside of the scope of the subpoena at the outside of the case. Instead, the district court took in context the two years of appellant. Well, I certainly don't want to decide cases in vacuums, but I do want to decide them under the governing law, which in this case is rule 17C. 17C requires a district judge to quash an unreasonable or oppressive subpoena. A word like unreasonable requires a comparison of costs and benefits. The target of this subpoena has told us its view of the costs of compliance, but what are the benefits of compliance? What is it that the grand jury needs that it doesn't already have or won't get if the target can, say, screen the documents for compliance with the subpoena? I appreciate that you may be reluctant to discuss that in public, and perhaps you will want to file a sealed response. But for me, at least, it's not possible to carry out a review for reasonableness without being able to understand the benefits as well as the costs of the district court's order. Yes, Your Honor. I'll answer generally in open court, and then if the court would like me to file a sealed response, I'm happy to do that afterwards. So I think there are two benefits here that the district court found. First, the appellant conceded that 230,000 documents hit on these very specific, carefully targeted keyword string searches, and that's 230,000 documents that the grand jury doesn't have. And the district court determined that appellant's two previous productions were inadequate. The first production, appellant didn't do… I'm not really asking the question, is there some chance that there will be some document out of 250,000 that will be of some use? That doesn't really tell us benefits that can be compared with costs. And when I speak of benefits, I'm speaking of marginal benefits. That is, benefits above and beyond the documents that the target has already turned over and which the prosecutor already has. It seems to me we have to compare marginal benefits against marginal costs. That's what a reasonableness review does. And it won't show marginal benefits just to say there is a non-zero chance that at least one out of 230,000 documents may be useful. Your Honor, the district court didn't find that it was a marginal benefit. The district court found that not turning over these 230,000 documents was an extraordinary threat to the grand jury in this case. And that is because appellant's past productions weren't useful. As I said, you may want to answer in more detail in a letter that can be sealed. But what you are saying now and what the district court said is nothing but the sort of generalities that could be said about every subpoena that has ever been issued in the history of the United States. And that's not going to help us compare marginal costs and marginal benefits. Your Honor, I disagree that the facts of this, that the district court issued a general order. And I'm happy to file a brief that goes into more detail. But I will note that appellant's first production didn't use any keyword searching. The second production, appellant used very generic search terms that the district court found didn't take into account the appellant's, you know, how the appellant was referring to its business terminology, how it was storing its files. And the district court found that those generic search terms were completely inadequate at producing responsive documents. So the court found that more specific targeted keyword searching strings that took into account appellant's business terminology were really the first time that good search terms were used. And that's really the benefit to the grand jury in this case. And the fact that the grand jury has been deprived of documents that specifically hit on these very targeted keyword search streams. And when you compare that to the cost, the district court found at appendix page 103 that the costs have been in large part driven by appellant's own process and their insufficient productions to date. And so the court determined that while, you know, there's some cost in complying with a subpoena, this doesn't, this order does not impose an undue or unreasonable cost on the appellant. And the court also determined that the keyword search strings, you know, may produce some non-responsive documents, but not an unreasonable amount. How can one tell that whether the responsive to non-responsive ratio is reasonable unless it is screened by an independent person? I mentioned the possibility of a special master, and I asked Mr. Stippett whether he had asked for that. I have the same question for you. Did you ask for that? No, Your Honor. So how can one tell whether the ratio of responsive to unresponsive documents is acceptable without some kind of screening? Well, Your Honor, it's on appellant. It's their burden to prove that the subpoena is unreasonable, that compliance would be unreasonable. And the district court found that appellant didn't provide any evidence showing that compliance would be unreasonable in this case. Look, if one wants to play with burdens, I can understand saying something like the burden rests on the target of the subpoena. But you made a different statement. You said the ratio of responsive to unresponsive documents is high, and therefore there's nothing unreasonable about this. And I want to know how you know that that is true. Well, Your Honor, I'm relying on the district court's factual finding. But the district court's factual finding doesn't appear to be based on the actual documents. That's what worries me. Sure, Your Honor, I understand that concern, but I would point Your Honor to appendix pages five through six, and I can't discuss the specific keyword search strings. But the district court did have those search strings in front of it, and it determined that those search strings are incredibly specific. They utilize Boolean terms and connectors, such as quotation marks, to hit on exact words they use. I hate to tell you, but surely you have done searches on Westlaw and Lexis using targeted search tags and Boolean connectors, searching for a particular case, and you've come up with 100 hits and still not found what you were looking for. The fact that there are Boolean search terms does not guarantee that, say, 80 percent of all the hits will be responsive. I wish it did, right? When I do an online search for legal authority, my outcomes are not nearly that good, and I do try to be precise. Yes, Your Honor, and I'm sure Your Honor's Westlaw skills are much better than mine. I doubt it. I don't think I've ever used as specific or as extensive search strings as are in the court's order, and again, those are at pages five through six of the appendix. And another thing the district court had before it, the fact that government's counsel and opposing counsel had been discussing the subpoena and documents for months at this point, and the court had assurance that the search strings took into account exactly how the appellant's company structured its files, how it was referring to specific business operations, and the district court determined that the search strings were crafted in a way that they would pull responsive documents. And I'll also mention the district court was really balancing interest here. It was considering the need to get timely evidence to the jury, but it was also considering appellant's interest. And so, for example, it allowed for a privilege review done by the appellant. It also allowed appellant to do a responsive individual-by-individual search and review of every single image that would be produced, and so that alleviates any concerns about vacation photos, funeral photos that opposing counsel was mentioning. The appellant, under the court's order, is allowed to conduct a responsiveness review for every single image, and the district court, in its discretion to enforce the subpoena, really struck a balance here, considering the importance of the grand jury and then also all of the interests at play, and that was well within the district court's discretion. And as this court recognized in the Klein case, the district court does have considerable discretion, and it's a valid consideration to consider how long a proceeding has gone on and how long the grand jury has been deprived of responsive documents. And I'd like to turn now to appellant's Fourth Amendment argument and note that centuries of Supreme Court cases have established that although the Fourth Amendment applies to subpoenas, its role in the subpoena process is modest, and a reasonable subpoena is protective enough of the Fourth Amendment. And here, the district court properly determined that the subpoena itself, as well as the keyword search strings, were reasonable under the Fourth Amendment, and to the extent that opposing counsel suggests that probable cause and a warrant was required, I respectfully, the government disagrees. This is very different from a situation where the government is executing a search warrant, you know, at a company's premises and obtaining documents. You know, the district court did not require appellant to turn over computers, hard drives for the government just to search through. A subpoena is a legitimate method for the government to obtain documents, and a warrant is not required for a company to have to turn over documents to a grand jury, even if the company doesn't want to produce those documents. And turning, you know, briefly just to appellant's argument that the subpoena is overbroad and not valid, again, the district court has considerable discretion in determining whether the language of a subpoena is overbroad. Under, you know, Rule 17C2, and here the district court understood the general focus of the grand jury inquiry and determined that the subpoena was targeted and reasonably tailored towards the investigation, and that is another decision by the district court that, you know, is afforded considerable deference under abuse of discretion standard. And I'll just return to just the general point that this case is really fact specific. It's governed by, you know, the specific circumstances in the case, and the district court was considering not only the context and the context of, you know, the two years that the appellant had to respond to the subpoena, but it was also considering past productions and the conduct to date. And in light of those circumstances, the district court made the decision that this sort of remedial order was the best balance and best approach to ensure the grand jury's timely receipt of evidence. And unless the court has further questions for that reason, we would ask the court to affirm. Thank you very much. Mr. Stipik, you had some time left for rebuttal. Oh, you're still on mute, Mr. Stipik. Sorry, I apologize. I'd like to address the court's questions about the marginal benefits versus the marginal costs. And what jumped out to me about that question is that there is no basis to conclude that there is a marginal benefit to the government of their collection and review of items that are not responsive to the subpoena. That case just can't simply be made under any circumstances. Mr. Stipik, you want us to assume that your review or your client's review would delete from the produced documents only those that were in fact non-responsive. And as I said earlier, I think the district judge doubts that premise. On the basis of the earlier rounds, the district judge was skeptical about whether you or your client would hand over all the responsive documents and hold back only the unresponsive ones. That appears to be why the judge said turn them all over. And that led to my question about how about a special master to see whether the premise is true. But I don't think in your statement you can simply assume or say that we must assume that your client will remove from the turnover only the genuinely non-responsive documents. Well, this review would not be conducted by the appellant. It would be conducted by appellant's counsel and contract lawyers as well that are duty-bound to do their best to take the language of the subpoena, which ought to be what governs what is responsive, and compare that against the document that they are reviewing and provide to the best of their ability the documents that are responsive to the subpoena. And that's the process that is used in most circumstances. The government did raise that as a tangential issue in addition to this expedience issue. But I note that the government in terms of their complaints about the prior production, the million pages of documents and a couple hundred thousand emails and other documents that were produced, they don't complain about, they haven't identified any indication other than the search words that that review was inappropriate. In fact, they complain more about over-inclusiveness of documents that were provided to the grand jury as part of the responsiveness review. So there's not a basis in our view in the facts presented for that concern, as well as the other issues that the government mentions here in terms of the amount of non-responsive materials expected to be swept up in the searches. Appellant did provide the government and the district court with results of its sampling process, which were overseen by appellants outside e-discovery expert. And those sampling results did establish that there are multiple problems with these supposed very precise keyword searches, that they were hitting on vacation-type emails. We informed the government of that in March or April, and they did nothing to correct that, that they were hitting on HR emails, totally irrelevant, and did not correct those. Other, you know, on the image files, it took us to provide those examples before the government, in the middle of the hearing with the magistrate judge, backed off and permitted responsiveness review for those images. And then even after the magistrate judge entered an order prohibiting such review, the government did nothing to correct that. So the only evidence, the only facts before the district court in terms of both the potential responsiveness of the non-responsive materials and with regard to appellants' prior search methodology were those facts presented, including the expert proffer that appellant provided. And the government did not provide any evidence-based to the contrary. I see my time is up. I thank the court for the time. And I think affirming the district court under these circumstances would set troubling precedent from a Fourth Amendment perspective. Thank you very much. Our thanks to both counsel. The case is taken under advisement.